IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JEREMY KEE,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:11-cv-1114 |

Plaintiff Jeremy Kee filed this quiet title suit against Defendant Federal National Mortgage Association (Fannie Mae) after the court declined to grant relief to Mr. Kee in two previous lawsuits regarding the same underlying mortgage dispute.[1]  Because the court finds that the issues that Mr. Kee raises in this suit have been previously adjudicated, the court GRANTS Fannie Mae's Motion to Dismiss (Dkt. No. 3).  Accordingly, the case is dismissed with prejudice.

BACKGROUND

On October 23, 2001, Mr. Kee took out a loan from Matrix Financial Services Corporation (Matrix) that was secured by a Deed of Trust on real property located at 4580 South 600 East, Murray, Utah 84107 (see Notice of Removal, Dkt. No. 2 Ex. 2).  Due to the low equity value in the property, Mr. Kee was required to have private mortgage insurance (PMI) as a

_____

[1]Case numbers 2:06-cv-206 and 2:08-cv-837.

condition of the loan.  (Order, at 2, Mar. 18, 2009, Dkt. No. 149 in case 2:06-cv-602.)  Mr. Kee's

attempts to later remove the PMI initiated a series of disputes between Mr. Kee and his loan

servicer, Crown Bank, and its successor in interest, Fifth Third Bank.[2]  In response to these

disputes, Mr. Kee stopped making his mortgage payments in April 2006.  (Id. at 3.)  In June

2008, a notice of default was recorded, and the property was later sold at a Trustee's Sale on

October 31, 2008.  (Id. at 3-4; Compl. ¶ 22, Dkt. No. 2-1 in case 2:11-cv-1114.)

During this time, Mr. Kee filed a number of claims against the parties involved, including

Fannie Mae.  In 2006, numerous small-claims suits that Mr. Kee had filed in Small Claims Court

were removed and consolidated into case number 2:06-cv-602 in front of the Honorable Clark

Waddoups.  These suits alleged Real Estate Settlement Procedures Act (RESPA) and other

violations against the Bank, as well as negligence against Matrix.  (See Am. Compl., Dkt. No. 44

in 2:06-cv-602.)  Mr. Kee alleged that Matrix was "not authorized to originate loans within the

State of Utah."  (Id. ¶ 58.)  In August 2007, Mr. Kee, Matrix, and the Bank stipulated "to dismiss

with prejudice all the claims asserted by Kee against Matrix in this action."  (Stipulated Mot.

Dismiss, Dkt. No. 65 in 2:06-cv-602.)  The court granted this motion.  (Order, Aug. 31, 2007,

Dkt. No. 66 in 2:06-cv-602.)

Mr. Kee also filed suit against Fannie Mae, on the basis that Fannie Mae did not provide

him a loan payoff statement.  But Judge Waddoups dismissed Fannie Mae from the suit, ruling

that Mr. Kee had "provided no authority or evidence to show why the actions of the Bank should

be imputed to Fannie Mae, who is the owner, not the servicer, of the loan."  (Id. at 26.)  Judge

---

[2]Judge Waddoups describes these conflicts in greater detail in his order of March 18, 2009 (Dkt. No. 149 in case 2:06-cv-602).  Because Fifth Third Bank is Crown Bank's successor in interest, for ease of reference, these two entities shall be referred to collectively as the "Bank."

Waddoups also dismissed fifty of the fifty-one RESPA claims, as well as the breach of contract, Fair Debt Collection Practices Act, Fair Credit Reporting Act, and defamation claims that Mr. Kee filed against the Bank on a motion for summary judgment.  (Id.)  The remaining RESPA claim was resolved at trial in the Bank's favor on November 16, 2009.  (See Minute Entry, Dkt. No. 168 in 2:06-cv-602.)

During the course of these proceedings, Mr. Kee requested that the court issue a preliminary injunction to prevent the sale of his property, which was scheduled to take place on October 31, 2008.  (See Dkt. No. 132 in 2:06-cv-602.)  His motion was premised on the argument that Matrix was not authorized under Utah law to originate loans.  Judge Waddoups denied Mr. Kee's motion, stating that not only was Mr. Kee barred from re-litigating claims against Matrix (since those claims had been dismissed with prejudice), but that "[e]ven if Kee could overcome his burden of showing his claim of invalidity is not barred, Kee failed to present sufficient evidence to show that Matrix failed to obtain a license in Utah or was otherwise not exempt from that requirement."  (Order, at 3-4, Oct. 31, 2008, Dkt. No. 143.)

In his order granting the Bank summary judgment on the majority of the RESPA and other claims, Judge Waddoups also granted injunctive relief against Mr. Kee:

> Kee has threatened legal action against the Bank numerous times and has filed six separate lawsuits—all stemming from his initial dispute with the Bank about PMI. The court finds that Kee's actions constitute an abuse of the court system. Accordingly, the court hereby enjoins Kee from filing additional suits against the Bank and its employees, agents, and counsel, but the injunction is limited in scope.  Specifically, Kee is enjoined from filing additional suits for all causes of action that were or could have been included in this lawsuit or one of the other five lawsuits.  Kee also is enjoined from bringing any of the same causes of action that have already been raised in his six lawsuits, provided that the event giving rise to the cause of action occurred on or before October 30, 2008 [the date of Mr. Kee's last lawsuit].  If Kee believes that actions taken by the Bank, or its

3

employees, agents, or counsel after October 30, 2008 have violated the law, Kee is not enjoined from bringing suit for such new causes of action.  The court cautions Kee, however, not to abuse this right.

(Order, at 31, Mar. 18, 2009, Dkt. No. 149 in 2:06-cv-602.)

Despite this ruling, Mr. Kee filed three new small claims cases against the Bank.  (See Report and Recommendations 3, Dkt. No. 193 in 2:06-cv-602.)  As a result, Judge Waddoups ordered Mr. Kee to show cause why he should not be held in contempt, and issued a bench warrant for his arrest when he did not appear at the hearing.  (Id.)  Ultimately, Judge Waddoups withdrew the bench warrant but expanded its injunctive relief.  Judge Waddoups required Mr. Kee to "obtain prior approval for any and all future lawsuits he wishes to file against the Bank or its employees, agents, and counsel, regardless of the date of the lawsuit, the date of the actions underlying the lawsuit, or the causes of action contained within the lawsuit."  (Id.; Order Adopting Report and Recommendations, Aug. 25, 2010, Dkt. No. 196 in 2:06-cv-602.)

Mr. Kee also filed a separate lawsuit, again in federal court, after Judge Waddoups denied Mr. Kee's request for a preliminary injunction that would have delayed the sale of his home. This second federal suit alleged, among other claims, that the Bank had violated Utah Code Ann. § 57-1-31 by including attorneys' fees in its calculation of the payment required to cure the default on the note.  (See Order, at 3, Sept. 2, 2009, Dkt. No. 87 in 2:08-cv-837.)  The case was assigned to the Honorable Dee Benson.  Judge Benson dismissed all the claims raised in this case on three separate grounds.  First, he found that Mr. Kee's "outrageous, offensive, and abusive behavior" was grounds itself for dismissal of the case in its entirety.  (Id. at 6.)  Second, Judge Benson found that none of Mr. Kee's claims, including the alleged violation of Utah Code Ann. § 57-1-31, had any merit.  Finally, Judge Benson found that, even though the case before him

4

was pending at the time Judge Waddoups issued his order for injunctive relief against Mr. Kee, the case was still "clearly within the spirit of that Order, and this case is dismissed on those grounds as well." (Id. at 10.)

Mr. Kee filed this action in 2011. Fannie Mae, the sole defendant in this suit, removed the case from state to federal court. The suit is styled as an action for quiet title, requesting "a judicial determination that the foreclosure was wrongful, that the original loan originator was not authorized to conduct business in Utah making the underlying transaction void as a matter of law, and that Plaintiff retains sole and exclusive title to the home free of any claims of Defendants." (Compl. ¶ 31, Dkt. No. 2-1 in 2:11-cv-1114.)

ANALYSIS

In order to succeed in an action for quiet title, Mr. Kee must "prevail on the strength of his own claim to title and not the weakness of a defendant's title or even its total lack of title." Church v. Meadow Springs Ranch Corp., 659 P.2d 1045, 1048-49 (Utah 1983). Mr. Kee cannot prevail on the strength of his title here. He does not dispute the existence of the underlying note and Deed of Trust, and there is no doubt that Mr. Kee stopped paying his loan in full, which caused the loan to go into default. (See Order, at 3, Mar. 18, 2009, Dkt. No. 149 in 2:06-cv-602.)

Mr. Kee relies instead on a series of allegations, mostly stated in his opposition to Fannie Mae's motion to dismiss, that the foreclosure process was unlawful. But these claims have been, or could have been, litigated in the earlier cases. For instance, Mr. Kee's insistence that "the original loan originator [Matrix] was not authorized to conduct business in Utah" blatantly ignores several previous orders holding that this issue was decided when Mr. Kee's claims against Matrix were dismissed with prejudice. (See, e.g., Order, at 10, Sept. 2, 2009, Dkt. No. 87

5

in 2:08-cv-837 (holding that "the issue of Matrix's ability to issue loans in Utah and the validity and enforceability of the Note and Trust Deed were resolved in the RESPA action).)

While Mr. Kee's counsel admits that the inclusion of this particular claim in the complaint was "inartful," Opp'n Mem. 22, Dkt. No. 9 in 2:11-cv-1114, the other allegations that Mr. Kee makes in his opposition are no more persuasive.  Mr. Kee claims that he attempted to pay the balance on the note to stop the foreclosure (Compl. ¶ 24, Dkt. No. 2-1); that attorney Katherine Norman's communications with him before she became the foreclosure trustee violated Utah Code Ann. § 57-1-31.5 (Opp'n Mem. 14, Dkt. No. 9); that he was not properly provided with payoff information before the October 31, 2008 foreclosure sale (id. at 15); and that the Bank added inappropriate and excessive demands for attorneys' fees to the balance of the amount owed under the note (id. at 8-9).  Not only do several of these claims relate to the Bank and not to Fannie Mae (the named defendant in this case), but many have been specifically adjudicated in previous cases.  Judge Benson, for instance, dismissed Mr. Kee's claim that the attorneys' fees were inappropriate and also held that the Bank had not violated § 57-1-31. (Order, at 10, Sept. 2, 2009, Dkt. No. 87 in 2:08-cv-837.)

The court does not see any evidence that Mr. Kee has included a new variant on his old arguments.  More importantly, none of his claims relate to events that occurred after October 30, 2008.  In his order, Judge Waddoups stated that Mr. Kee was not barred from filing additional claims if those claims related to actions taken after October 30, 2008.  (Order, at 31, Mar. 18, 2009, Dkt. No. 149 in 2:06-cv-602.)  Mr. Kee argues that he complies with that order because the current case relates to the sale of his house, which occurred on October 31, 2008, and therefore escapes the deadline imposed by Judge Waddoups by one day.  But all of Mr. Kee's arguments as

to why this foreclosure was unlawful concern events that occurred days and often months before the date that his house was sold. These events clearly occurred before October 30, 2008, and Mr. Kee could have included these claims in one of his many previous lawsuits. As a result, the court finds that Mr. Kee's current lawsuit, like his suit before Judge Benson, falls "clearly within the spirit" of Judge Waddoups's order of March 18, 2009, and is therefore barred.

The court declines to sanction Mr. Kee at this time. Because Fannie Mae has not proceeded with actions to remove Mr. Kee from the house, Mr. Kee may have been legitimately confused as to the legal status of the property. But the court finds nothing in Mr. Kee's pleadings that cause it to question Fannie Mae's ownership of the property, and the court has no power to order Fannie Mae to evict Mr. Kee. If Mr. Kee remains on the property, he does so at his own risk.

If Mr. Kee brings any further actions relating to the foreclosure and sale of his property, the court will recommend that sanctions be issued against him.

ORDER

The court GRANTS Defendant's Motion to Dismiss (Dkt. No. 3) and DENIES AS MOOT Defendant's Motion to Strike Plaintiff's Supplemental Documents (Dkt. No. 22). Plaintiff's case is dismissed with prejudice and the court orders the clerk to close the case.

SO ORDERED this 24th day of April, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge